IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

KENNETH NATHANIEL MITCHUM,

     Plaintiff,

vs.                                          No. 19-cv-2533-JPM-dkv

ANDREW SAUL,
Commissioner of Social Security,

     Defendant.

---

REPORT AND RECOMMENDATION AFFIRMING THE DECISION OF THE
COMMISSIONER

---

On August 14, 2019, the plaintiff, Kenneth Nathanial Mitchum ("Mitchum"), proceeding *pro se*, filed a complaint pursuant to 42 U.S.C. § 405(g) seeking judicial review of a decision of the Commissioner of Social Security (the "Commissioner") denying his claim for disability insurance benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. § 401, *et seq.*[1] (Compl., ECF No. 1.) As relief, Mitchum seeks reversal without remand of the unfavorable decision and requests a grant of monthly maximum benefits. (Pl.'s Br. ¶¶ 49, 52, ECF No. 23-1.) This case has been referred to the United States Magistrate Judge for management

---

[1] Mitchum also applied for, and was denied, supplemental security income under Title XIV of the Act, (R. at 743, 587); however, in his complaint, Mitchum only seeks review of the denial of his disability insurance benefits under Title II. (Compl., ECF No. 1.)

and for all pretrial matters for determination and/or report and recommendation as appropriate. (Admin. Order 2013-05, Apr. 29, 2013.)

For the reasons that follow, it is recommended that the Commissioner's decision be affirmed.

I.    PROPOSED FINDINGS OF FACT

A.    <u>Procedural History</u>

In December 2014, Mitchum applied for disability insurance benefits under Title II of the Act and for supplemental security income under Title XVI of the Act. (R. at 741-48.) Mitchum alleges an onset of disability date of January 10, 2013, (*id.* at 741, 743), because of lower back, hip, and shoulder pain, (*id.* at 773). Mitchum's claims were denied initially on March 11, 2015, (*id.* at 573, 587), and again upon reconsideration on June 16, 2015, (*id.* at 601, 616). Mitchum requested a hearing before an Administrative Law Judge (the "ALJ"). (*Id.* at 652-53.)

Mitchum appeared and testified at the hearing before the ALJ on March 27, 2017 in Memphis, Tennessee. (*Id.* at 123-40.) On July 18, 2017, ALJ Paul Michael Stimson issued an unfavorable decision denying benefits. (*Id.* at 105-22.) Mitchum appealed the ALJ's decision to the Social Security Appeals Council (the "Appeals Council"), and on April 19, 2019, the Appeals Council denied Mitchum's request for review of the ALJ's decision after considering additional informational. (*Id.* at 23-29.)

2

Accordingly, the ALJ's decision became the Commissioner's final decision and Mitchum filed the present lawsuit on August 14, 2019 seeking judicial review of the ALJ's July 18, 2017 decision. (Compl., ECF No. 1.)

B.  Factual Background

Born on December 18, 1969, Mitchum was forty-three years old on January 10, 2013, the date alleged as the onset of disability. (R. at 573, 587.)  Mitchum completed high school and two years of college. (*Id.* at 774.)  Mitchum also has specialized training in welding. (*Id.*)  Mitchum worked as an inventory control lead at a computer manufacturer and as a receiving supervisor at a DVD/CD manufacturer. (*Id.* at 775.)

In his disability report, Mitchum alleged disability due to lower back, hip, and shoulder pain. (*Id.* at 773.)  In his function report, Mitchum claimed that his conditions affect his ability to lift, squat, bend, stand, reach, walk, kneel, climb stairs, and complete tasks. (*Id.* at 792.)  Mitchum alleged that he is unable to take care of himself and that it takes him considerable time to engage in personal care, his girlfriend or mother must prepare meals for him, and he is unable to do any household or yard chores. (*Id.* at 788-89.)  As to his ability to work, Mitchum alleged that he is unable to stand and perform job tasks without pain and loss of balance. (*Id.* at 792.)  Furthermore, Mitchum stated that he used crutches, a wheelchair, a cane, and glasses, but that only

the crutches and glasses were prescribed by a doctor. (*Id.* at 793.)

The record contains numerous treatment records, hospital records, and two consultative examinations. The record begins with emergency department records from May of 2003. (*Id.* at 898-906.) Mitchum was complaining of pain in his back, but most records during this time demonstrate no findings of any impairment. (*Id.*) The record also contains several records from Methodist LeBonheur Hospital where Mitchum complained of hip pain, back spasms, and back pain dated September 1, 2008, November 7, 2008, and January 17, 2009. (*Id.* at 995-1010.) There are multiple records from Saint Francis Hospital as well. Mitchum was admitted on March 15, 2009 complaining of hip pain; July 28, 2009 complaining of pain in his hands and diagnosed with a skin infection; July 5, 2010 complaining of lower back pain; June 12, 2011 complaining of hip and back pain and diagnosed with hip bursitis; on April 4, 2012 complaining of left shoulder and low back pain as a result of a motor vehicle collision; July 15, 2012 complaining of lower back, neck, and left shoulder pain as a result of the motor vehicle collision in April; on October 14, 2012 where he received x-rays of his chest and was diagnosed with a viral illness; on December 3, 2012 complaining of back and neck pain and diagnosed with back pain with sciatica; and on April 21, 2016 for a cough and diagnosed with bronchitis. (*Id.* at 1025-87; 1218-51;

4

1556-59.)  There are also records of two hospital admissions to West Tennessee Healthcare Emergency Department on January 17 and 20, 2014, where Mitchum complained of back and hip pain.  (*Id.* at 1359-1408.)  Mitchum also checked in to Regional Hospital in Jackson on May 1, 2014 complaining of pain in his back, hip, and shoulder.  (*Id.* at 1409-1427.)

Additionally, there are treatment records from December 2004 to November 2008 from Dr. Yvette Randle ("Dr. Randle") and Dr. David Dowling ("Dr. Dowling") discussing Mitchum's diagnosis of sacroiliitis.  (*Id.* at 951-78.)  Dr. Randle saw Mitchum in September 2008 and ultimately referred him to Dr. Dowling.  (*Id.* at 946.)  The record also includes an outpatient record from Baptist Memorial Health Care, showing that as of August 16, 2005, Mitchum was diagnosed with sacroiliitis and was complaining of hip pain.  (*Id.* at 908-14.)  However, at the time, Dr. Dowling found that Mitchum's alignment was normal, spaces and cord were normal, and that the imaging taken of L3-L5 were unremarkable – negative for disk herniation and/or stenosis.  (*Id.* at 915.)

In September 2008, Dr. Dowling performed a procedure on Mitchum.  (*Id.* at 923.)  To help with Mitchum's diagnosis of sacroiliitis, Mitchum was injected at the bilateral sacroiliac joint with a mixture of Celestone Soluspan and Marcaine MPF.  (*Id.* at 924.)  Later, in November 2008, Mitchum appeared again before Dr. Dowling for an examination and MRI of both Mitchum's spine and

5

pelvis.    According  to  Dr.  Dowling,  there  was  mild  disc  space
desiccation  at  L4-L5  without  evidence  of  a  herniation  and  the
remaining  lumbar  examination  was  normal.    (*Id.* at 942.)    In his
opinion, Mitchum had minimal degenerative disc disease at L4-L5.
(*Id.*)  As to Mitchum's pelvis, Dr. Dowling opined he had bilateral
sacroiliitis  with  interval  worsening.    (*Id.* at 943.)

There  are  also  treatment  notes  from  Dr.  Samuel  Schroerlucke
("Dr. Schroerlucke") from July 14, 2011 to January 3, 2013.  (*Id.*
at 1266-74.)  July 14, 2011 was the first time Mitchum appeared to
Dr. Schroerlucke and was complaining of low back and bilateral hip
pain; however, Dr. Schroerlucke found that both Mitchum's cervical
and lumbar spine had full range of motion, Mitchum had a normal
gate, and Mitchum had full range of motion in his bilateral lower
extremities.    (*Id.* at 1273-74.)    Dr.  Schroerlucke  did  not  see
Mitchum again until July 18, 2012, where he noted that Mitchum's
lumbar spine did have a decreased range of motion.  (*Id.* at 1271.)
From that point on, Mitchum saw Dr. Schroerlucke again on August
3, 2012; August 29, 2012; December 6, 2012; and January 3, 2013.
(*Id.* at 1266-70.)  Each time, Dr. Schroerlucke noted that Mitchum
was increasingly doing better – with one setback in December 2012
– with physical therapy.  (*Id.*)  In fact, at the last entry on
January 3, 2013, Dr. Schroerlucke noted that Mitchum indicated he
was ready to go back to work full time and was happy with his
progress in physical therapy.  (*Id.* at 1266.)

6

The record also includes medical documentation for Mitchum's application for leave under the Family and Medical Leave Act signed by Dr. Schroerlucke.  Although somewhat scarce, the document states that Mitchum's condition began around July 13, 2012 and could become chronic.  (*Id.* at 1016.)  Additionally, Dr. Schroerlucke stated that Mitchum was unable to work due to sever lumbar pain and lumbar strain and could not return until September 1, 2012. (*Id.* at 1017.)  Dr. Schroerlucke also opined that Mitchum could have flair ups of severe pain and was recommended physical therapy. (*Id.* at 1016-17.)

Included in the record are also medical records from The Bartlett Family Physicians Group dated from May 4, 2009 to October 17, 2012.  Between May 4, 2009 and July 5, 2011, most of Mitchum's visits were the result of his complaints of hip pain.  (*Id.* at 1115-33.)  After July 5, 2011 to October 17, 2012, however, much of Mitchum's visits were regarding other illnesses and several records make note that while Mitchum still had pain, his pain was doing better, and he was in physical therapy.  (*Id.* at 1095-113.)

There are physical and occupational therapy records spanning May 13, 2003 to January 14, 2013.  (*Id.* at 1287-1358.)  Mitchum also appeared at Memphis Health Center on January 15, 2015 regarding his obesity, hypertension, diabetes, and complaints of pain; on March 24, 2015 for coughing and eye problems; on July 6, 2015 for hypertension and diabetes; on July 21, 2015 for a kidney

7

infection; and on January 7, June 22, August 24, and December 21, 2016 for follow ups on his diabetes and hypertension. (*Id.* at 1441-55; 1467-1555.)

In February 2015, Dr. Jennifer Johnson ("Dr. Johnson") performed a consultative examination of Mitchum. (*Id.* at 1457-63.) Dr. Johnson found that Mitchum presented with no spinal tenderness or spasms and his strength was five out of five in all major muscle groups. (*Id.* at 1459.) Additionally, Dr. Johnson noted that Mitchum's station was normal and that his gait was slow, but he otherwise performed what was asked of him, and that while Mitchum did bring crutches to the exam he did not use them, and they were not medically necessary. (*Id.* at 1460.) Additionally, Mitchum's range of motion was generally normal except for very small limitation in his extension and lateral flexion in his cervical spine and his flexion in his lumbar spine. (*Id.*)

Dr. Johnson opined that Mitchum could lift up to twenty pounds frequently in an eight-hour day; carry up to twenty pounds occasionally in an eight-hour day; sit continuously in an eight-hour day; stand frequently in an eight-hour day; walk occasionally in an eight-hour day; and never reach, stoop, kneel, or climb stairs. (*Id.* at 1462-63.) Additionally, Dr. Johnson stated that Mitchum would benefit from weight loss and physical therapy. (*Id.* at 1463.)

At the initial level, Dr. Thomas Thrush ("Dr. Thrush"), the state agency medical consultant, determined that Mitchum could: occasionally lift and/or carry twenty-five pounds; frequently lift and/or carry twenty pounds; stand and/or walk for a total of six hours in an eight-hour work day; sit for a total of six hours in an eight-hour work day; push and/or pull without limits; frequently climb ramps/stairs; occasionally climb ladders/ropes/scaffolds; frequently balance; occasionally stoop; frequently kneel; frequently crouch; occasionally crawl; and was unlimited by environmental limitations with the exception of avoiding concentrated exposure to hazards. (*Id.* at 582-84; 596-98.) At the reconsideration level, Dr. George Walker opined the same RFC assessment. (*Id.* at 611-613.)

At the hearing before the ALJ, Mitchum testified as to his pain, diabetes, and physical limitations. (*Id.* at 123-139.) Mitchum first recounted that he had been seeing Dr. Schroerlucke and that he had a spinal nerve block procedure performed. (*Id.* at 130-31.) Additionally, Mitchum testified that he had two herniated disks but did not want surgery. (*Id.* at 131.) Mitchum testified that he was in a lot of pain in his back and hips, that he could walk without a walker but preferred not to, and that he still did daily chores, but was in pain. (*Id.* at 132-33.) Mitchum testified that he was diagnosed with type two diabetes in 2011. (*Id.* at 135.) Mitchum also testified that he experienced frequent

9

urination, swelling in his feet, numbness, and blurred vision as
a result of his diabetes. (*Id.* at 1335.)

Mitchum also stated that he did not agree with Dr. Johnson's
assessment. (*Id.* at 138.)  In Mitchum's opinion, he can lift or
carry five to six pounds, sit for three hours, stand for two hours,
and walk for fifteen minutes followed by a ten-minute break. (*Id.*
at 135-38.)  Mitchum stated that he had gotten worse since he saw
Dr. Johnson two years prior and the ALJ ordered a second
consultative examination to be done. (*Id.* at 139.)

Dr. Barry Siegel ("Dr. Siegel") examined Mitchum on April 25,
2017. (*Id.* at 1576.)  Dr. Siegel noted that Mitchum's gait was
normal and that an x-ray of his spine showed what was likely a
congenital defect at L5 but did not show anything else such as a
herniated disk. (*Id.* at 1578.)  Dr. Siegel's assessment was that
Mitchum had type two diabetes, was morbidly obese, and had lumbago.
(*Id.* at 1579.)  Dr. Siegel opined that Mitchum could: lift and/or
carry up to twenty pounds continuously, up to fifty pounds
frequently, and up to 100 pounds occasionally; sit, stand, and
walk for up to eight hours in an eight-hour workday and up to four
hours at one time without interruption; continuously reach,
handle, finger, feel, and push/pull with both hands; frequently
operate foot controls with both feet; frequently climb stairs and
ramps; never climb ladders or scaffolds; occasionally balance,
stoop, kneel, crouch, and crawl; and frequently be exposed to

unprotected heights, moving mechanical parts, operating a motor vehicle, humidity/wetness, dust, odors, fumes, extreme cold/heat, and vibrations. (*Id.* at 1580-84.) Furthermore, Dr. Siegel noted that Mitchum did not need his cane to ambulate. (*Id.* at 1581.)

C.    The ALJ's Decision and the Five-Step Analysis

The ALJ rendered his unfavorable decision on July 18, 2017. (R. at 105-22.) Using the five-step disability analysis,[2] the ALJ concluded that Mitchum was not disabled from January 10, 2013 through the date of his decision. (*Id.* at 115.)

Under the first step of the sequential analysis, the claimant must not be engaged in substantial gainful activity for a period of not less than twelve months. *See* 20 C.F.R. §§ 404.1520(a)(4)(i), (b). At this first step, the ALJ found that Mitchum had not engaged in substantial gainful activity since January 10, 2013 – Mitchum's alleged onset date. (R. at 110.)

---

[2] Entitlement to social security benefits is determined by a five-step sequential analysis set forth in the Social Security Regulations. *See* 20 C.F.R. §§ 404.1520 & 416.920. The Act defines disability as the inability to engage in substantial gainful activity which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1). The claimant bears the ultimate burden of establishing an entitlement to benefits. *Born v. Sec'y of Health & Human Servs.*, 923 F.2d 1168, 1173 (6th Cir. 1990). The initial burden of going forward is on the claimant to show that he is disabled from engaging in his former employment; the burden of going forward then shifts to the Commissioner to demonstrate the existence of available employment compatible with the claimant's disability and background. *Id.*

At the second step, a finding must be made that the claimant suffers from a severe impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), (c). At this step, the ALJ found that Mitchum had the following severe impairments: lumbar degenerative disc disease, diabetes mellitus, hypertension, and obesity. (R. at 110.)

In the third step, the ALJ determines whether the impairments meet or equal the severity criteria set forth in the Listing of Impairments contained in 20 C.F.R. Pt. 404, Subpt. P, App. 1. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), (d). The ALJ found that Mitchum's impairments did not meet or medically equal the severity of one of the listed impairments. (R. at 111.)

If the claimant's impairments do not meet or equal a listed impairment, the ALJ must undertake the fourth step in the analysis and determine the claimant's residual functional capacity ("RFC") to work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), (e). Here, the ALJ determined that Mitchum has the RFC to perform a full range of light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b). (R. at 111.) In making this determination, the ALJ explained that he considered all symptoms and the "extent to which these symptoms [could] reasonably be accepted as consistent with the objective medical evidence." (*Id.*) Specifically, the ALJ first looked to Mitchum's testimony, acknowledging that Mitchum testified regarding damage to his lower back which affected his ability to function. (*Id.*) The ALJ also considered Mitchum's testimony as

12

to the recommendation of surgery, Mitchum's refusal to have the
surgery, Mitchum's use of a walker, and Mitchum's reports of daily
life. (*Id.*) The ALJ, however, explained that there were two
"factors [which] weigh[ed] against considering [Mitchum's]
allegations to be strong evidence in finding [Mitchum] disabled."
(*Id.*)

The first was that Mitchum's alleged limitations on daily
activities could not be substantiated by objective evidence with
"any reasonable degree[] of certainty." (*Id.* at 112.) Second,
the ALJ explained that even if Mitchum's daily activities were as
limited as he alleged, it was "difficult to attribute that degree
of limitation to [Mitchum's] medical condition, as opposed to other
reasons." (*Id.*) To support this decision, the ALJ considered the
medical records. The ALJ specifically noted that in January 2013,
Mitchum had been participating in physical therapy related to his
back pain. (*Id.*) The ALJ considered the relevant reports and
that Mitchum had gone back to work full time with no problems after
his physical therapy was completed. (*Id.*) Additionally, the ALJ
explained that in January 2014, Mitchum began complaining of
generalized pain, back pain, and lower back pain. (*Id.*) The ALJ
considered Mitchum's diagnosis of arthritis and low back pain,
that Mitchum underwent a nerve block, and that examinations showed
that while Mitchum walked with a cane, he ambulated well and

13

demonstrated a normal range of motion and alignment in his back.
(*Id.*)

The ALJ also examined records from May 2014. (*Id.*) The ALJ
noted that Mitchum complained of lower back pain, but that his
examination showed "his motor strength was [five] out of [five] in
all extremities[,] . . . [and h]is gait was normal." (*Id.*) The
ALJ then considered the two car accidents Mitchum had been involved
in during 2015. (*Id.*) The ALJ explained that the records revealed
that the accidents resulted in "soft tissue injuries only" and
Mitchum used a cane for ambulation. (*Id.*) Again, the ALJ pointed
to the records which described Mitchum's physical examinations as
generally normal and noted that Mitchum denied gait disturbance
and muscle weakness in August 2016. Accordingly, because the
objective medical records "failed to document ongoing complaints
of back pain" the ALJ determined that Mitchum was capable of
lifting and/or carrying capacities within the requirements of
light work. (*Id.*)

The ALJ then considered the evidence regarding Mitchum's
treatment for diabetes. (*Id.*) The ALJ explained that although
Mitchum had consistently reported having diabetes, he also
consistently denied symptoms associated with diabetes. (*Id.*)
Considering the records as to Mitchum's blood glucose ranges and
his testimony, the ALJ found that Mitchum's diabetes did not
prevent him from performing light work activity. (*Id.* at 112-13.)

14

As to Mitchum's hypertension, the ALJ considered the medical records which showed that Mitchum's blood pressure responded appropriately to medication. (*Id.* at 113.) Furthermore, the ALJ explained that the medical evidence demonstrated that Mitchum had no other disease resulting from hypertension such as heart disease or kidney disease. As such, the ALJ determined that Mitchum's hypertension "would impose no limitations that are not accommodated by limitation to light work." (*Id.*)

The ALJ then turned to Mitchum's obesity. The ALJ explained that Social Security Ruling ("SSR") 02-1 provides that obesity can cause "limitations of functions in an individual's ability" to engage in daily activities such as standing, walking, or lifting. Accordingly, the ALJ explicitly stated that Mitchum's obesity was to be taken into account in considering Mitchum's ability to engage in light work. (*Id.*)

The ALJ then considered the opinions of two consultative examining doctors. First, the ALJ reviewed the findings of Dr. Johnson in February 2015. (*Id.*) After thoroughly explaining Dr. Johnson's findings, the ALJ found that Dr. Johnson's opinion was consistent with the medical evidence on the record as a whole. (*Id.*) Because Dr. Johnson's opinion was consistent with the record and because Dr. Johnson evaluated Mitchum, the ALJ gave great weight to Dr. Johnson's opinion and explained that this opinion supported Mitchum's capacity for light work. (*Id.*)

15

The second examination was done by Dr. Siegel in April 2017. Again, the ALJ explained Dr. Siegel's observations and Dr. Siegel's findings upon physical examination. (*Id.*) However, Dr. Siegel's findings were much less restrictive than Dr. Johnson's findings. (*Id.*) For example, the ALJ explained that Dr. Siegel opined that Mitchum could lift and/or carry fifty pounds frequently and could lift and/or carry 100 pounds occasionally. (*Id.* at 14.) Accordingly, the ALJ explained that Dr. Siegel's opinion was "too optimist[ic]" and not well supported by Mitchum's medical record. (*Id.*) As such, the ALJ gave this opinion less weight. (*Id.*)

Finally, the ALJ considered the state agency medical consultants' opinions. (*Id.*) The ALJ explained that those opinions were consistent with light work, and that although they assessed postural limitations, the objective medical treatment records failed to support those findings. (*Id.*) Accordingly, the ALJ gave the opinions partial weight. (*Id.*) Considering the evidence, the treatment records, Mitchum's testimony, and the opinions of two consultative doctors as well as the state consultative agency doctors, the ALJ found that Mitchum was capable of light work.

At the final step, the ALJ considers the claimant's RFC, age, education, and work experience to assess whether the claimant has the ability to make an adjustment to other work. *See* 20 C.F.R. §§ 404.1520(a)(4)(v), (g). The ALJ determined that Mitchum was

16

capable of performing past relevant work as a receiving supervisor
and, in the alternative, there were other jobs that existed in
significant numbers in the national economy that Mitchum could
perform.  (R. at 114-15.)  The ALJ explained Mitchum was forty-
three years old at the time of his alleged onset date.  (*Id.* at
114.)  Furthermore, the ALJ noted Mitchum had a high school
education and the ability to communicate in English.  (*Id.*)  The
ALJ also found that transferability of job skills was not material
because applying the Medical-Vocational Rules supported a finding
of "not disabled."  (*Id.* at 114-15.)  The ALJ, however, also
explained that in the alternative, there were still numerous jobs
in the national economy for Mitchum to perform.  (*Id.*)
Accordingly, the ALJ determined that based on Mitchum's RFC for
light work, his age, his education, and his work experience, a
finding of "not disabled" would be mandated by Medical-Vocational
Rules 202.21 and 202.22.  (*Id.* at 15.)  As such, the ALJ determined
that Mitchum was not disabled as defined by the Act from his
alleged onset date to the date of the decision.  (*Id.*)

## II.  PROPOSED CONCLUSIONS OF LAW

### A.  Standard of Review

Under 42 U.S.C. § 405(g), a claimant may obtain judicial
review of any final decision made by the Commissioner after a
hearing to which he was a party.  "The court shall have power to
enter, upon the pleadings and transcript of the record, a judgment

affirming, modifying, or reversing the decision of the
Commissioner of Social Security, with or without remanding the
cause for a rehearing." *Id.* Judicial review of the Commissioner's
decision is limited to whether there is substantial evidence to
support the decision, and whether the Commissioner used the proper
legal criteria in making the decision. 42 U.S.C. § 405(g); *Barker
v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994); *Abbott v. Sullivan*,
905 F.2d 918, 922 (6th Cir. 1990). Substantial evidence is more
than a scintilla of evidence but less than a preponderance and is
"such relevant evidence as a reasonable mind might accept as
adequate to support a conclusion." *Kirk v. Sec'y Health & Human
Servs.*, 887 F.2d 524, 535 (6th Cir. 1981)(quoting *Richardson v.
Perales*, 402 U.S. 389, 401 (1971)).

In determining whether substantial evidence exists, the
reviewing court must examine the evidence in the record taken as
a whole and "must 'take into account whatever in the record fairly
detracts from its weight.'" *Abbott*, 905 F.2d at 923 (quoting
*Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984)). If
substantial evidence is found to support the Commissioner's
decision, however, the court must affirm that decision and "may
not even inquire whether the record could support a decision the
other way." *Barker*, 40 F.3d at 794 (quoting *Smith v. Sec'y of
Health & Human Servs.*, 893 F.2d 106, 108 (6th Cir. 1989)).
Similarly, the court may not try the case *de novo*, resolve

18

conflicts in the evidence, or decide questions of credibility.
*Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th
Cir. 1994). The Commissioner, not the court, is charged with the
duty to weigh the evidence, to make credibility determinations,
and to resolve material conflicts in the testimony. *Walter v.
Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997); *Crum v.
Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990).

B.    Whether Substantial Evidence Supports the ALJ's Decision

Although difficult to ascertain, it appears that Mitchum
argues that substantial evidence does not support the ALJ's
decisions as to his RFC or his ability to return to past relevant
work. (Pl.'s Br. ¶¶ 14, 27, ECF No. 23-1.) The government argues
that substantial evidence supports both decisions. (Gov't's Br.
4-11, ECF No. 25.)

1. *Whether    Substantial    Evidence    Supports    the    RFC
   Determination*

Mitchum argues that the ALJ's decision is not supported by
substantial evidence because the ALJ did not consider the two car
accidents Mitchum was in or medical records from 2003 to 2017.
(Pl.'s Br. ¶¶ 26, 28, ECF No. 23-1; Pl.'s Facts Aff. ¶ 18, ECF No.
20.) The plaintiff must do more than "[m]erely marshall[] evidence
to suggest that he is disabled" but must show that the ALJ's
decision is not supported by substantial evidence. *Peterson v.
Comm'r of Soc. Sec.*, 552 F. App'x 533, 540 (6th Cir. 2014). There

is substantial evidence supporting the ALJ's determination when a "'reasonable mind might accept' the relevant evidence "as adequate to support a conclusion.'" *Warner v. Comm'n of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)(quoting *Kirk*, 667 F.2d at 535). "The substantial-evidence standard . . . presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Blakley v. Comm'n of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009)(quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Accordingly, it does not matter that there is also "substantial evidence in the record that would have supported an opposite conclusion." *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003)(internal quotation omitted).

Despite Mitchum's contentions, the ALJ's decision was supported by substantial evidence. At the outset of his opinion, the ALJ considered Mitchum's testimony and Mitchum's subjective complaints and limitations. (R. at 111.) The ALJ recognized Mitchum's complaints of lower back, hip, and shoulder pain and considered Mitchum's testimony regarding how his alleged disabilities affected his ability to function. (*Id.*) Additionally, the ALJ considered that Mitchum was using a walker. (*Id.*) However, as the ALJ explained, Mitchum's subjective complaints and beliefs were not necessarily supported by the objective medical evidence. (*Id.* at 112.) SSR 16-3p provides that there is a two-step process in evaluating an individual's

symptoms.  SSR 16-3p, 2017 WL 5180304, *3 (Oct. 25, 2017).  At the
second step, the ALJ "must consider whether an individual's
statements about the intensity, persistence, and limiting effects
of his or her symptoms are consistent with the medical signs and
laboratory findings of record."  *Id.* at *5.  Here, the ALJ
explained that Mitchum's complaints could not be objectively
supported by the evidence and that even if Mitchum was truly as
limited as he said, it was difficult to attribute those limitations
to his medical condition and not to other reasons.  (*Id.* at 112.)

Substantial evidence supports the ALJ's determination because
the medical evidence did not show that Mitchum was unable to
perform light duty work.  The records demonstrate a long history
of back, hip, and shoulder complaints; however, the record also
shows that Mitchum's complaints of pain decreased with physical
therapy and nerve blockers.  For example, the ALJ began with
records starting in January 2013 – the month and year of Mitchum's
alleged onset date – where Mitchum had been doing physical therapy
and reporting that he felt good about his progress and wanted to
go back to work.  (*Id.* at 112, 1266.)  At that time, Mitchum had
almost a full range of motion.  (*Id.* at 112, 1347-59.)  By January
2014, Mitchum was complaining of generalized pain again; however,
as the ALJ explained, Mitchum underwent a nerve block and records
indicate that his back pain improved.  (*Id.* at 112, 1372-1408,
1427-1436.)  A physical examination done showed a normal range of

21

motion and normal alignment. (*Id.* at 112, 1395.) In making his
determination, the ALJ also looked at records from May 2014, which
showed that although Mitchum was complaining of pain, the records
indicated that he had a strength of five out of five and his gait
was normal. (*Id.* at 112, 1417.) Furthermore, despite Mitchum's
contention that the ALJ did not consider the two accidents he was
involved in, the ALJ expressly mentioned them. (*Id.* at 112.) But,
as Mitchum stated, the accidents resulted in soft tissue damage
only. (*Id.* at 112, 130.) From then on, although Mitchum
complained of pain, the records showed his examinations were
essentially normal, except for some mild tenderness in April 2016.
(*Id.* at 112, 1427-1574.)

As to Mitchum's diabetes, Mitchum had consistently reported
having diabetes; however, as the ALJ explained, Mitchum also
generally denied having symptoms related to diabetes with the
exception of his testimony at the hearing. (*Id.* at 112, 1433,
1446.) Additionally, the ALJ considered that laboratory records
showed Mitchum's glucose levels ranged from ninety-four to 182 and
his A1c ranged from 7.0 to 12.1. (*Id.* at 112, 1441-78.) As to
Mitchum's hypertension, the ALJ considered the ranges of blood
pressure documented in Mitchum's records. (*Id.* at 113.) The
record demonstrates that Mitchum's blood pressure responded to
medication when it was taken as directed. (*Id.*) Additionally,
the ALJ cited to the lack of evidence regarding any heart disease

22

or kidney disease resulting from hypertension. (*Id.*) Furthermore, following SSR 02-1, the ALJ explicitly considered Mitchum's obesity and the role it played in whether he could perform light work. (*Id.*)

There was also no treating physician's opinion regarding Mitchum's RFC or opining that Mitchum was disabled. (*Id.* at 138.) "It is significant when no physician submits a medical conclusion that a claimant is disabled and unable to perform any type of work." *Wolcott v. Comm'r of Soc. Sec.*, 2015 WL 474326, at *3 (W.D. Tenn., Feb. 4, 2015)(citing *Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920-21 (6th Cir. 1987)). The ALJ thus considered the two consultative examinations that were in the record. The first was Dr. Johnson's February 2015 examination. Dr. Johnson found there were no spinal abnormalities, no tenderness or spasms, and Mitchum's strength was a five out of five. (R. at 113, 1459-61.) Additionally, the ALJ noted Mitchum's range of motion was abnormal by five degrees but was otherwise normal at the time Dr. Johnson examined him. (*Id.* at 113, 1460-61.) Dr. Johnson also found that even though Mitchum was overweight, his obesity did not adversely affect his ability to walk, twist, turn, bend, and lift. (*Id.* at 1461.)

The ALJ also considered the second consultative examination, which was performed by Dr. Siegel in April 2017 after the ALJ ordered it during the hearing. (*Id.* at 113.) The ALJ considered

that Dr. Siegel reported Mitchum's gait was normal and Mitchum's
range of motion was generally normal with some limitations. (*Id.*
at 113, 1578.) Furthermore, the x-rays taken showed that Mitchum's
spine was normal, minus a congenital defect, and that Mitchum's
use of a walker was not necessary. (*Id.* at 1578.) However, Dr.
Siegel's RFC assessment was significantly less limiting than Dr.
Johnson's; Dr. Siegel opined Mitchum could lift and/or carry fifty
pounds frequently and could frequently climb stairs and ramps.
(*Id.* at 114.)

The ALJ also considered the state agency medical consultants'
opinions. (*Id.*) The ALJ then noted that the opinions were
consistent with light work. (*Id.*) The ALJ did explain, however,
that although the consultants assessed postural limitations, the
medical records – specifically Mitchum's treatment records –
failed to establish consistent postural difficulties. (*Id.*) As
such, the record as a whole and the ALJ's meticulous review of it,
demonstrates that the ALJ's RFC determination was supported by
substantial evidence.

Additionally, Mitchum argues that the ALJ did not exhibit or
consider evidence dated May 2003 to mid-July 2017. (Pl.'s Br. ¶
28, ECF No. 23-1.) Mitchum does not specify any record or opinion
overlooked by the ALJ and Mitchum's medical records from that time
period are included in the administrative record. (R. at 141-479,
898-1455, 1465-1574.) "[F]or purposes of determining [Mitchum's]

eligibility for benefits, the relevant time period runs from his alleged onset date to his date last insured." *Watters v. Comm'n of Soc. Sec. Admin.*, 530 F. App'x 419, 421 (6th Cir. 2013). Here, the ALJ properly reviewed the medical records and opinions from the relevant time period – Mitchum's alleged onset date of January 10, 2013 to Mitchum's date last insured, December 31, 2018.

Finally, it is the ALJ's responsibility to determine Mitchum's RFC based on all the relevant evidence, including medical records, observations, and Mitchum's own description of his limitations. *See Anderson v. Shalala*, 51 F.3d 777 (8th Cir. 1995); 20 C.F.R. §§ 416.945(a) & 416.946. The ALJ considered all of the evidence in the record and adequately explained the basis for his RFC finding. The ALJ determined that Mitchum could perform a full range of light work – which was less limiting than the RFC assessment by Dr. Johnson, but considerably more limiting than the RFC suggested by Dr. Siegel. As the ALJ's RFC was within the "zone of choice" supported by substantial evidence, it is recommended that his finding is proper.

2. *Whether Substantial Evidence Supports the ALJ's Determination that Mitchum Could Return to Past Work*

Although unclear, it appears that Mitchum also argues that substantial evidence does not support the ALJ's conclusion that Mitchum could return to past relevant work. (Pl.'s Br. ¶ 27, ECF No. 23-1.) At the fourth step of the sequential analysis, the ALJ

may find that the claimant is not disabled if the ALJ determines that the claimant can perform his past relevant work "either as the claimant actually performed it or as generally performed in the national economy." 20 C.F.R. § 416.960(b); *see also Lewis v. Barnhart*, 281 F.3d 1081, 1083 (9th Cir. 2002)(providing that at step four, the ALJ may find that a claimant can return to his past relevant work either as actually or generally performed); *Garcia v. Sec'y of Health & Human Servs.*, 46 F.3d 552, 557 (6th Cir. 1995)(holding the same); SSR 96-8p, 1996 WL 374184, at *3 (July 2, 1996).

This step of the sequential analysis "necessarily entails a comparison of the physical demands of the claimant's past relevant work with [his] present mental and physical capacity." *Walters v. Comm'n of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997)(citation omitted)(alteration in the original). Additionally, Mitchum still has the burden of proof to show that the ALJ's decision was not supported by substantial evidence. *Young v. Sec'y of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990). The ALJ determined that Mitchum's RFC was for a full range of light work after considering the medical records, Mitchum's testimony, and two examining consultative opinions. In his work history report, Mitchum described his last job as requiring him to walk for four hours; stand for one hour; sit for four hours; never climb, stoop, kneel, handle, reach; write for ten minutes; never crawl; and lift

26

no more than fifteen pounds.  (R. at 799.)  At the hearing, Mitchum testified that he had worked as an inventory receiver and as a managing receiver, working the latter job for eleven years.  (*Id.* at 127-28.)  Mitchum testified that he was on his feet most of the day, but then stated that he was doing administrative tasks half the day and physical labor the other half.  (*Id.* at 128.)  According to Mitchum, he would have to lift up to twenty-five pounds.  (*Id.*)

Light work is defined as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. . . a job is [considered light work] when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling. . . .[the claimant] must have the ability to do substantially all of these activities." 20 C.F.R. § 404.1567(b).  Mitchum's description of his past relevant work as a receiving manager fits within the classification of light work.  Even Mitchum's testimony adheres to the classification of light work with the exception of him stating that he sometimes had to lift up to twenty-five, rather than twenty pounds.  However, it is not for this court to make credibility determinations as to whether Mitchum's testimony was more accurate than his original description of his job in his work history report.  *See Cutlip*, 25 F.3d at 286; *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003)(explaining that upon review, the court of appeals was to accord the ALJ's credibility determinations

27

great weight and deference). Accordingly, there is substantial evidence supporting the ALJ's determination that Mitchum could return to past relevant work. Thus, the ALJ's decision that Mitchum was not disabled was supported by substantial evidence.

The ALJ, however, went on to the fifth step as an alternative. At step five, it becomes the Commissioner's burden to show "a significant number of jobs in the economy that accommodate the claimant's residual functional capacity." *See Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 855 (6th Cir. 2010)(citations omitted); 20 C.F.R. § 1520(g)(1). The ALJ may use the Medical-Vocational guidelines found at 20 C.F.R. Part 404, subpt. P, App. 2. *See Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423-24 (6th Cir. 2008). "Where the claimant suffers from an impairment limiting only his strength, the [ALJ] can satisfy his burden . . . through reference to the [Medical-Vocational Guidelines]." *Abbott*, 905 F.2d at 926; *see also Kyle*, 609 F.3d at 855. "The Medical-Vocational Guidelines take account of only a claimant's 'exertional' impairment; that is, 'an impairment which manifests itself by limitations in meeting the strength requirements of jobs[.]'" *Abbott*, 905 F.2d at 926. "Where a claimant suffers from an impairment that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness, manipulative restrictions, or heightened sensitives to

28

environmental contaminants, rote application of the grid is
inappropriate." *Id.*

Mitchum does not argue that a vocational expert should have
been called at his hearing, nor does he point to any non-exertional
limitation that the ALJ should have considered. Accordingly, the
ALJ's reliance on the Medical-Vocational Guidelines to determine
that Mitchum could perform other work found in significant numbers
in the national economy was proper. The ALJ considered Mitchum's
RFC, age, education, and work experience when considering the
Medical-Vocational Guidelines. (R. at 115.) In considering these
factors, the ALJ found that Mitchum was capable of performing work
in significant numbers in the national economy, and substantial
evidence supported this decision. Accordingly, it is recommended
that substantial evidence supported the ALJ's determination of
"not disabled."

C.    Mitchum's Due Process Rights Were Not Violated

Mitchum also makes various vague accusations that his right
to due process was violated. (Pl.'s Br. ¶¶ 13, 28; ECF No. 23-
1.) It appears from Mitchum's brief that the basis for his due
process violation is that the ALJ did not adhere to certain
regulations and/or procedures – specifically, provisions of the
Hearings, Appeals, and Litigation Law Manual ("HALLEX"). (*Id.* at
¶¶ 12, 13, 28.) Mitchum argues that the ALJ failed to follow
HALLEX I-2-1-15 and HALLEX I-3-3-3. (*Id.*) HALLEX I-2-1-15 is

titled "Exhibits" and provides guidance on what exhibits to include and how to exhibit them in the record.  (HALLEX ch. I-2-1-15.) HALLEX I-3-3-3 is titled "Error of Law" and provides guidance to the Appeals Council as to when an ALJ has committed an "error of law" for purposes of evaluating a claim before the Social Security Administration.  (HALLEX ch. I-3-3-3.)

Mitchum points to no record which was improperly exhibited. Furthermore, all the records – many of which were outside of the relevant time period – are properly exhibited in the administrative record.  Additionally, HALLEX I-3-3-3 applies to the Appeals Council, defining what "error of law" means for purposes of evaluating a claim before the Social Security Administration.  That is not applicable here.  More importantly, however, Mitchum has failed to indicate how any alleged violation of the HALLEX guidelines have prejudiced him beyond making conclusory statements.

Although HALLEX is not considered binding authority in the Sixth Circuit, *Bowie v. Comm'r of Soc. Sec.*, 539 F.3d 395, 399 (6th Cir. 2008), some courts have granted relief when the ALJ failed to follow HALLEX guidelines and where the plaintiff demonstrated prejudice from such failure. *See Beason v. Comm'r of Soc. Sec.*, No. 1:13-CV-192, 2014 WL 4063380, at *10 (E.D. Tenn. Aug. 15, 2014); *Kendall v. Astrue*, 2010 WL 1994912, at *4 (E.D. Ky. May 19, 2010)(requiring a "convincing showing of prejudice").

Mitchum has alleged no facts which demonstrate that he was prejudiced by any failure of the ALJ to adhere to HALLEX.

As for any other allegation that Mitchum's due process rights were violated, he again fails to establish that he was prejudiced. The Sixth Circuit has acknowledged that due process principals apply to social security cases. *Robinson v. Barnhart*, 124 F. App'x 405, 410 (6th Cir. 2005). In the social security context, due process requires proceedings to be "full and fair." *Flatford v. Chater*, 93 F.3d 1296, 1305 (6th Cir. 1996). In determining whether a proceeding is "full and fair," a court looks to the private interest, the risk of error along with any probable value of additional procedures, and the government interest. *Ferriell v. Comm'r of Soc. Sec.*, 614 F.3d 611, 620 (6th Cir. 2010). A social security claimant's "private interest" is his "interest in a fair determination of [his] qualification (or lack thereof) for social security disability benefits and a meaningful opportunity to present [his] case." *Adams v. Massanari*, 55 F. App'x 279, 286 (6th Cir. 2003). Furthermore, even where an agency fails to adhere to its own procedures, a court will not remand for further proceedings "unless 'the claimant has been prejudiced on the merits of deprived of substantial rights.'" *Rabbers*, 582 F.3d at 654.

Here, Mitchum has not alleged facts – but merely alleges legal conclusions – showing that his due process rights were violated. From what it appears, Mitchum had a "full and fair" proceeding

where the ALJ reviewed his medical records, asked him questions, allowed Mitchum to testify as to his own beliefs about his limitations, and even ordered a more recent consultative examination. Furthermore, even if the ALJ failed to adhere to a regulation, policy, guideline, or rule, it would not warrant reversal and remand in this case because Mitchum has not shown that he was prejudiced in any way. Accordingly, it is recommended that this is not a basis for reversal of the Commissioner's decision.

D.  Scope of Judicial Review and Lack of Subject Matter Jurisdiction

Mitchum also makes various other arguments in relation to his denial of social security benefits. Mitchum contends that the Commissioner and the ALJ are "bias against him because of his age, race, and sex." (Pl.'s Br. ¶ 36, ECF No. 23-1.) Mitchum also generally states that he is "suing the [Social Security Administration] for violating [his] Civil Rights, [and] the [United States] Constitution." (*Id.* at ¶ 30.) In a separate document filed with the court and referenced in his brief, Mitchum alleges that the Commissioner "defrauded" him. (Pl.'s Facts Aff. ¶ 37, ECF No. 20; Pl.'s Br. ¶ 25, ECF No. 23-1.)

Mitchum's sole complaint is for review of the Commissioner's final decision denying Mitchum's social security disability income application. (Compl., ECF No. 1.) Mitchum asserts no other cause

of action.  In his complaint, Mitchum checked the box "Disability
Insurance Benefits Claim (Title II)" as the only basis for the
court's jurisdiction.[3]    (Compl. § II, ECF No. 1.)    The
jurisdictional basis for judicial review of a decision of the
Commissioner denying disability insurance benefits under Title II
of the Act is 42 U.S.C. § 405(g).  Section 405(g) provides for
judicial review of any final decision of the Commissioner.  42
U.S.C. § 405(g).  Judicial review, however, is permitted only under
§ 405(g) and is limited by § 405(h).  *See Shalala*, 529 U.S. at 8-
13; *Freeman v. Comm'n of Soc. Sec.*, 2013 WL 856281, at *1 (W.D.
Tenn. Mar. 6, 2013).  Section 405(h) states in relevant part:

> No findings of fact or decision of the Commissioner of
> Social Security shall be reviewed by any person,
> tribunal, or governmental agency except as herein
> provided.  No action against the United States, the
> Commissioner of Social Security, or any officer or
> employee thereof shall be brought under section 1331 or
> 1346 of Title 28, United States Code, to recover on any
> claim arising under this subchapter.

42 U.S.C. § 405(h).  Accordingly, § 405(h) limits § 405(g) by not
only making it the sole basis for judicial review of the denial of
benefits under Title II of the Act, but also by limiting the scope

---

[3] It should be noted that Mitchum also makes a vague reference
to jurisdiction pursuant to § 1331 – federal question jurisdiction.
(Pl.'s Br. ¶ 34, ECF No. 23-1.)  However, as the Commissioner
points out in the government's brief, 42 U.S.C. § 405(h)
specifically precludes the district courts' jurisdiction under §
1331, making § 405(g) the only avenue for judicial review of the
Commissioner's final decision.  *See Mathews v. Eldridge*, 424 U.S.
319, 327 (1876).

of that judicial review. "[O]n review of the Commissioner's decision that a claimant is not totally disabled within the meaning of [the Act], the only issue reviewable by this court is whether the decision is supported by substantial evidence." *Buxton v. Haller*, 246 F.3d 762, 772 6th Cir. 2001)(citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)).

Because Mitchum only brought suit for judicial review pursuant to § 405(g), which is limited, it is recommended that this court does not have subject matter jurisdiction over any potential race, sex, or age discrimination or fraud claims Mitchum may assert against the federal government.

### III. RECOMMENDATION

For the foregoing reasons, it is recommended that the decision of the Commissioner be affirmed.

Respectfully submitted this 3rd day of February 2020.

s/Diane K. Vescovo
DIANE K. VESCOVO
CHIEF UNITED STATES MAGISTRATE JUDGE


NOTICE

Within fourteen (14) days after being served with a copy of this report and recommended disposition, a party may serve and file written objections to the proposed findings and recommendations. A party may respond to another party's objections within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Failure to file objections within fourteen (14) days may constitute a waiver of objections, exceptions, and further appeal